IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **SALVATORE CHIODO**<br><br>　　　　**Plaintiff**<br><br>v.<br><br>**AETNA LIFE INSURANCE COMPANY**<br><br>　　　　**Defendant** | **CIVIL ACTION**<br>**NO. 14-02270** |

**PAPPERT, J.**                                                                                                       **APRIL 6, 2015**

## MEMORANDUM

The Employee Retirement Income Security Act ("ERISA") allows long-term disability plan participants to bring civil actions to recover benefits due under the terms of the plan. 29 U.S.C. § 1132(a)(1)(B). Plaintiff Salvatore Chiodo ("Chiodo") filed suit pursuant to that section after Defendant Aetna Life Insurance Company ("Aetna") denied his claim for long-term disability benefits.

Chiodo and Aetna both move for summary judgment. Aetna defends its decision to deny Chiodo's claim for benefits, contending that it was based on a lack of objective medical evidence showing that Chiodo was unable to perform the material duties of his own occupation. (Def.'s Mot. for Summ. J. at 1, Doc. No. 11.) Chiodo argues that the facts show that Aetna's decision was arbitrary and capricious because it gave undue weight to the opinion of a physician hired by Aetna to conduct a peer review while arbitrarily ignoring the contrary opinions of Chiodo's treating physicians. (Pl.'s Mot. for Summ. J. at 10-11, Doc. No. 10.)

Upon careful review of the administrative record and consideration of the parties' legal arguments, the Court finds that the undisputed material facts show that Aetna's decision to deny Chiodo's claim for long-term disability benefits was supported by substantial evidence. As a

result, Aetna's decision was not arbitrary and capricious, nor an abuse of discretion, and Aetna is entitled to judgment as a matter of law. The Court accordingly grants Aetna's motion for summary judgment and denies Chiodo's motion for summary judgment.

**Factual and Procedural Background**

Chiodo was employed by URS E&C Holdings, Inc. ("URS") as an Engineer Services Lead Coordinator. (Aetna 82.)[1] He participated in the URS Long Term Disability Benefits Plan (the "Plan"), which URS funds through a Group Accident and Health Insurance Policy (the "Policy") issued by Aetna. (Aetna 52-79, 186-187).

For ERISA purposes, Aetna is a fiduciary "with complete authority to review all denied claims for benefits" under the Policy. (Aetna 67.) The Policy provides Aetna with "discretionary authority to determine whether and to what extent employees and beneficiaries are entitled to benefits; and construe any disputed or doubtful terms of the Policy." (*Id*.) Under the Policy, Aetna is "deemed to have properly exercised such authority unless Aetna abuse[d] its discretion by acting arbitrarily and capriciously." (*Id*.)

The Plan specifies a "test of disability." For the first 12 months that disability benefits are payable, plan participants are deemed disabled if they are unable to perform the material duties of their own occupation solely because of disease or injury. (Aetna 4.) After the first 12 months of disability, plan participants are deemed disabled if they are unable to work at any reasonable occupation solely because of disease or injury. (*Id.*) Any period of disability ends when Aetna finds the participant is no longer disabled, the participant fails to furnish proof of disability, or the participant is no longer under the regular care of a physician. (Aetna 5.)

---

[1]   In support of their respective motions, both parties attach documents that are Bates labeled with a prefix of "Aetna." For ease of reference, the Court maintains this numbering scheme when citing to the record.

Chiodo went on short-term disability on or about April 11, 2012 due to multiple intracranial abscesses. Under the Plan's elimination period, Chiodo could not receive long-term disability benefits until October 8, 2012. (Aetna 89.) By letter dated September 17, 2012, Aetna disability claim manager BiBi Ally ("Ally") advised Chiodo that he was reaching the maximum period of short-term disability benefits and that Aetna would review his claim file to determine whether he was eligible for long-term disability benefits. (Aetna 186-187.) The letter included an Attending Physician Statement ("APS") and a Capabilities and Limitations Worksheet ("CLW") to be completed by Chiodo's treating physicians. (*Id.*) Ally spoke with Chiodo on September 20, 2012. (Aetna 84.) Chiodo said that he was on his way to see his doctor, but that he planned to return to work with no restrictions on October 8, 2012. (*Id.*)

Ally then received an APS and office visit notes from Chiodo's family practice physician, Robert Pedowitz, regarding Chiodo's September 20, 2012 visit. Dr. Pedowitz noted that Chiodo's "minimal balance issues" were "improving significantly." (Aetna 488.) Chiodo had no complaints of memory loss. (*Id.*) Dr. Pedowitz recorded Chiodo's prognosis as "good" and believed that Chiodo would achieve maximum medical improvement in 10 to 14 days. (Aetna 487.) The September 20, 2012 visit notes state that Chiodo was "overall feeling a lot better" and "will be able to return to work full duty without restrictions on 10/1/12." (Aetna 488, 491.)

Ally spoke with Chiodo on October 2, 2012 to see if he had returned to work. (Aetna 85.) Chiodo stated that he had not returned to work as ordered by Dr. Pedowitz, nor had he been back to see Dr. Pedowitz since the September 20 visit. (Aetna 93, 216.) Consequently, by letter dated October 4, 2012, Ally advised Chiodo that Aetna was denying long-term disability benefits effective October 8, 2012, because there were "insufficient findings to support an inability for [Chiodo] to perform [his] own occupation" at that time. (Aetna 215-217.) The letter noted

Chiodo's continued improvement while on short-term disability and the notes from the September 20, 2012 visit in which Dr. Pedowitz cleared Chiodo to return to work with no restrictions on October 1, 2012.  (Aetna 216.)  The letter highlighted that Chiodo did not return to work on that date even though he had no updated medical information to provide in support of that decision.  (*Id.*)  The letter listed the types of medical information Chiodo would need to submit to substantiate his claim and stated that Aetna would review this information if Chiodo provided it.  (*Id.*)

Aetna received additional medical information from Chiodo over the following weeks.  (Aetna 102-105.)  While much of the information submitted was duplicative of information Aetna already had, Chiodo submitted new notes from an October 15, 2012 visit with Dr. Pedowitz.  (Aetna 413-419.)  These notes stated that Chiodo had attempted to return to work on October 8, 2012, but he was unable to focus and complete his assigned tasks.  (Aetna 413.)  He experienced dizziness, had memory problems, and became very anxious.  (*Id.*)  He had taken to walking with a cane again.  (*Id.*)  Chiodo told Dr. Pedowitz that he was "not sure if he wants to return to work based on how he has been feeling" and was "asking if [he] should be on long term disability."  (*Id.*)

Dr. Pedowitz was unsure of the cause of Chiodo's subjective complaints.  (Aetna 416.)  His examination of Chiodo was unremarkable other than finding that Chiodo had a slight drift when attempting to balance with his eyes closed.  (Aetna 414-415.)  Nevertheless, Dr. Pedowitz diagnosed Chiodo with balance disorder, hypertension benign, memory loss, and anxiety-general.  (Aetna 415.)  He ordered an MRI, referred Chiodo to a neurologist, and restricted him from working until he was further evaluated.  (Aetna 416.)

Aetna added this new information to Chiodo's file and referred the matter for an internal clinical consultant review ("CCR") to be completed by Rozanna Latchman, a registered nurse. (Aetna 105.) Nurse Latchman reviewed Chiodo's job duties, medical documentation, and summaries of phone conversations between Chiodo and Ally. (Aetna 111-115.) Nurse Latchman concluded that there were no objective medical records in Chiodo's file to provide sufficient evidence that Chiodo was experiencing memory loss or cognitive decline that would render him unable to perform his job as an Engineer Services Lead Coordinator. (*Id.*)

Ally then reviewed Nurse Latchman's CCR along with the description of Chiodo's job activities. (Aetna 116.) Ally determined that there was a lack of clinical evidence supporting a finding that Chiodo was disabled from performing the material duties of his own occupation. (Aetna 219-220.) By letter dated October 30, 2012, Ally advised Chiodo that the medical evidence, including the notes from the October 15 visit with Dr. Pedowitz, was insufficient to reverse Aetna's initial decision to deny long-term disability benefits. (Aetna 219-220.) Ally also spoke with Chiodo regarding this decision by telephone on October 30, 2012. (Aetna 116.) During that call, Chiodo told Ally that he was scheduled for an MRI the following day and an appointment with a neurologist the following week. (*Id.*) Ally told Chiodo to submit the MRI results and office notes from his appointment for consideration on appeal. (*Id.*)

Aetna did not hear anything further from Chiodo until February 11, 2013, when Ally contacted him for a status update. (Aetna 133-136.) Chiodo stated that he felt his condition was worsening. (*Id.*) He provided Ally with the names of his treating physicians: Dr. Pedowitz, Dr. Kenneth Liebman, and Dr. Errol Rummel. (*Id.*) Ally sent each of these treating physicians an APS and CLW to complete and return. (Aetna 138-140.)

5

Ally received the requested materials over the course of the next month. She received a letter from Bordentown Family Medical Center stating that Dr. Pedowitz was no longer associated with that practice. (Aetna 395.) Their records showed, however, that Chiodo had last been treated by Dr. Pedowitz in October 2012 when he was referred to a neurologist. (*Id.*) Chiodo was supposed to follow up with Dr. Pedowitz in November 2012, but he failed to do so. (*Id.*) Bordentown Family Medical Center had "no records of permanent disability or even reason for disability other than a temporary form for handicap placard." (*Id.*)

Ally also received materials from Dr. Liebman, Chiodo's treating neurosurgeon. Dr. Liebman submitted an APS and office visit notes showing that he had last seen Chiodo on November 7, 2012. (Aetna 411.) The APS listed a diagnosis of an intracranial abscess, and stated that Chiodo was not released to work until June 3, 2013 at which time Dr. Liebman anticipated significant clinical improvement. (*Id.*)

Dr. Liebman's office visit notes stated that Chiodo had previously been treated for intracranial abscesses, which had "improved significantly" through treatment with antibiotics. (Aetna 311.) Dr. Liebman was concerned, however, that even though the abscesses had largely resolved, their location "can result in rather significant neurologic deficits/deterioration." (*Id.*) Dr. Liebman stated that Chiodo "has improved significantly but he still does have sequelae[2] that correlate to his brain abscesses." (*Id.*) Dr. Liebman did not identify what those sequelae were, nor did he order a follow-up visit or schedule any testing to determine the extent and severity of the neurologic deficits he believed were present given the location of Chiodo's intracranial abscesses. (*Id.*) Rather, he ordered an MRI "to make sure there are no new abscesses forming and make sure the previous enhancing areas have resolved." (*Id.*) Dr. Liebman last contacted

---

[2] A sequela is "a condition that is the consequence of a previous disease or injury." *Oxford English Dictionary* (online ed. 2015).

Chiodo on November 30, 2012 when he called to tell him the MRI "look[ed] good." (Aetna 324.)

Finally, Ally received and reviewed documentation submitted by Dr. Rummel, Chiodo's neuro-optometrist. These documents showed that Chiodo had some issues with double vision. (Aetna 383.) Dr. Rummel represented, however, that Chiodo's "visual condition should not preclude working." (Aetna 384.)

With this information from Chiodo's physicians, Ally referred the updated file to Linda Mohi ("Mohi") for another internal CCR. (Aetna 152-157.) Mohi acknowledged Dr. Liebman's diagnoses but pointed out that Chiodo had not undergone any neuropsychological testing to validate his subjective complaints of memory loss, imbalance, and cognitive deficits. (*Id.*) Mohi concluded that "the submitted medical documentation lacks supporting evidence by physical examination or diagnostic test findings" that would alter Aetna's denial of benefits. (Aetna 155.)

Chiodo filed an appeal of the denial of benefits with Aetna on May 7, 2013. (Aetna 161.) The appeal was assigned to Senior Appeal Specialist Kay Bryant ("Bryant"). (Aetna 165.) Bryant interviewed Chiodo by telephone. (Aetna 168.) Chiodo told Bryant that he needed more time to gather and submit supporting medical records from his treating physicians. (*Id.*) Bryant gave Chiodo until June 20, 2013 to collect and submit this information. (Aetna 171.) Chiodo never submitted any additional medical records. (Aetna 171.) Bryant proceeded with the appeal review on June 25, 2013. (*Id.*)

As part of the appeal review, Bryant referred Chiodo's file to Board Certified Neurologist Kenneth Root for an independent medical review. (Aetna 173.) Dr. Root submitted his independent review report on July 30, 2013. (Aetna 300-304.) Dr. Root found that there was a lack of objective medical evidence to support a functional impairment as of October 8, 2012.

(Aetna 303.)  Dr. Root acknowledged the diagnoses and opinions of Drs. Pedowitz and Liebman. (*Id.*)  He underscored, however, that neither of those doctors provided any detailed objective documentation to back up their opinions and that Chiodo's MRI scans from October and November 2012 "indicate no active acute disease process such as an abscess or lesion which is producing symptoms . . . ."  (*Id.*)

Dr. Root also noted that Dr. Liebman did not order follow-up tests or identify demonstrable objective findings to support his opinion regarding possible sequelae.  (*Id.*)  Dr. Root attempted to contact Dr. Liebman twice to find out "what, if any, objective neurologic findings and test results exist up to the present in regards to [Chiodo's] possible neurological impaired [sic] and inability to work."  (*Id.*)  Dr. Root noted that Dr. Liebman's APS did "not explain the rationale for recommending off work status, and [Dr. Root] wanted to review with him any objective finding."  (*Id.*)  Dr. Liebman did not return Dr. Root's calls.  (*Id.*)

Bryant reviewed Dr. Root's report along with the other information in Chiodo's claim file.  (Aetna 278.)  Bryant forwarded a copy of Dr. Root's report to Dr. Liebman with a request that he review and respond to any disagreements he had with the report's conclusions.  Bryant never received any comments from Dr. Liebman.  (Aetna 276, 278.)  By letter dated August 27, 2013, Bryant advised Chiodo that Aetna was upholding the denial of benefits.  (Aetna 277-279.)  Bryant's letter stated that Chiodo's long-term disability benefits were denied "due to a lack of medical evidence to support a functional impairment which precluded [Chiodo] from performing the material duties of [his] own occupation as of October 8, 2012."  (Aetna 277.)  The letter also advised Chiodo of his right to bring a civil action under ERISA.  (Aetna 279.)  Chiodo exercised that right by filing his complaint in this action.  Both Aetna and Chiodo now move for summary judgment.

**Legal Standard for Summary Judgment**

Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." *Smathers v. Multi-Tool, Inc./Multi-Plastics, Inc. Emp. Health & Welfare Plan*, 298 F.3d 191, 194 (3d Cir. 2002); *see also* Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). A mere scintilla of evidence in support of the non-moving party will not suffice; there must be evidence by which a jury could reasonably find for the non-moving party. *Liberty Lobby*, 477 U.S. at 252. "When confronted with cross-motions for summary judgment . . . the Court considers each motion separately." *Wernicki-Stevens v. Reliance Standard Life Ins. Co.*, 641 F. Supp. 2d 418, 422 (E.D. Pa. 2009).

**Standard of Review under ERISA**

Under ERISA, courts review a denial of benefits "under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Where the benefit plan gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan, a court reviews a denial of benefits for abuse of discretion. *See id.*; *Funk v. CIGNA Grp. Ins.*, 648 F.3d 182, 190 (3d Cir. 2011).

The parties agree that the abuse of discretion standard governs the Court's review in this case. (Pl.'s Mot. for Summ. J. at 10; Def.'s Mot. for Summ. J. at 15.) In the ERISA context, this abuse of discretion standard is essentially identical to an arbitrary and capricious standard. *Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 845 n.2 (3d Cir. 2011). Thus, a court may overturn a

plan administrator's denial of benefits only "if it is without reason, unsupported by substantial evidence or erroneous as a matter of law." *Funk*, 648 F.3d at 190 (quoting *Doroshow v. Hartford Life & Accident Ins. Co.*, 574 F.3d 230, 234 (3d Cir. 2009)). A decision is supported by substantial evidence if "there is sufficient evidence for a reasonable person to agree with the decision." *Courson v. Bert Bell NFL Player Ret. Plan*, 214 F.3d 136, 142 (3d Cir. 2000).

**Discussion**

Aetna's decision to deny Chiodo long-term disability benefits was not an abuse of discretion. To the contrary, that decision was supported by substantial evidence. Reports from Chiodo's treating physicians show steady and substantial improvement in the months leading up to October 2012. (Aetna 311-313, 488-508.) This improvement culminated in Dr. Pedowitz recommending that Chiodo return to work without restrictions on October 1, 2012. (Aetna 491.) Chiodo chose not to return to work on that day. Instead, he waited until October 8 to return to work, upon which his condition purportedly deteriorated rapidly. (Aetna 413.) Upon examining Chiodo a week later, Dr. Pedowitz was unable to definitively explain this turn for the worse. He referred Chiodo to a neurologist for further analysis. (*Id.*)

At that appointment, Dr. Liebman opined that Chiodo was likely to have ongoing sequelae due to the location of his substantially resolved brain abscesses. (Aetna 311.) Dr. Liebman did not, however, schedule a follow-up appointment or conduct any clinical tests or evaluations to identify specific sequelae. A follow-up MRI failed to show any ongoing acute problem that would account for Chiodo's self-reported symptoms. (Aetna 324.) As a result, there was an absence of objective medical evidence to substantiate both Dr. Liebman's analysis and Chiodo's subjective complaints. Denial of a benefits claim under such circumstances is not an abuse of discretion. *See, e.g.*, *Dinote v. United of Omaha Life Ins. Co.*, 331 F. Supp. 2d 341,

349 (E.D. Pa. 2004) (upholding decision to deny long-term disability benefits for "lack of objective medical evidence.").

Chiodo argues in his motion for summary judgment that Aetna's denial was an abuse of discretion because Aetna did not account for Dr. Pedowitz's October 15 report that he should remain on disability and Dr. Liebman's November 7 opinion that Chiodo was suffering from sequelae related to his prior abscesses.³ (Pl.'s Mot. for Summ. J. at 10-11.) He also contends that Aetna gave undue weight to Dr. Root's opinion even though Dr. Root never examined Chiodo. (*Id.*) Both arguments fail.

First, Aetna considered Dr. Pedowitz's October 15 report, but recognized that Dr. Pedowitz himself was at a loss as to what was causing Chiodo's professed symptoms. Dr. Pedowitz commented on Chiodo's "normal CT" scans and was "uncertain" if Chiodo's complaints were linked to his prior brain abscesses. (Aetna 416.) Likewise, Aetna considered Dr. Liebman's diagnosis but noted that it was not supported by any reasoning or objective medical evidence. (Aetna 301-302.) Chiodo never had a follow-up appointment with Dr. Liebman, and Dr. Liebman reported that Chiodo's most recent MRI "looks good." (Aetna 324.) Dr. Liebman made no effort to address these shortcomings and inconsistencies despite Aetna's repeated efforts to reach out to him. (Aetna 278, 302-303.)

Chiodo also points to a May 16, 2012 letter written by Dr. Liebman. (Pl.'s Mot. for Summ. J. ¶ 13.) That letter states that Chiodo "has physical limitations and cognitive limitations that are preventing him from doing his normal job." (Aetna 312.) It goes on to conclude that for Chiodo "to proceed with his normal employed status is impossible." (*Id.*) This letter, however,

---

³ Chiodo asserts that Aetna's *initial* denial of benefits on October 4, 2012 "did not account for Dr. Pedowitz's opinion in his October 15, 2012 report that [Chiodo] must remain on disability." (Pl.'s Mot. for Summ. J. at 10.) The Court, however, must review Aetna's *final* decision to deny Chiodo benefits after appeal. *See Funk*, 648 F.3d at 191 n.11 ("A plan administrator's final, post-appeal decision should be the focus of review."). Aetna's final post-appeal denial of Chiodo's claim accounted for Dr. Pedowitz's October 15 report.

predates subsequent examinations that show Chiodo's continued improvement. (Aetna 311-313, 488-508.) It also predates Dr. Pedowitz's September 20, 2012 examination in which he cleared Chiodo to return to work as of October 1, 2012. Therefore, Dr. Liebman's May 16 letter is of limited evidentiary value when determining whether Chiodo was unable to perform the material duties of his own occupation as of October 8, 2012, nearly six months later.

Aetna was not required to give any special weight to Dr. Liebman and Dr. Pedowitz's opinions. *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2002) ("[C]ourts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician . . . ."). This is especially true here where Dr. Root's independent evaluation called those opinions into question. (Aetna 303.) Aetna was not required to discount Dr. Root's opinion simply because it was based on an evaluation of Chiodo's medical records rather than on an independent examination. *See, e.g.*, *Marshall v. Conn. Gen. Life Ins. Co.*, No. 02-cv-03662, 2005 WL 1463472, at *10 (E.D. Pa. Jun. 17, 2005) ("[T]he decision to rely upon written submissions, rather than ordering an independent medical examination, fails to render a plan administrator's decision arbitrary and capricious.").

Construing the evidence in the light most favorable to Chiodo, Aetna was left with conflicting opinions, both based on reliable evidence. Aetna did not abuse its discretion by resolving this conflict in a way that was unfavorable to Chiodo. *See Johnston v. Hartford Life & Accident Ins. Co.*, No. 03-cv-3336, 2004 WL 1858070, at *28 (E.D. Pa. Aug. 19, 2004) ("That Hartford had to resolve competing medical records and opinions, and did so in a manner unfavorable to Johnston, does not constitute an abuse of discretion.").

Under the Plan, Chiodo bore the burden of establishing that he met the test for disability. (Aetna 5); *see also, e.g.*, *Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 439 (3d Cir. 1997),

12

*abrogated on other grounds by Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008).  After a thorough review, and after affording Chiodo multiple opportunities to present evidence in his favor, Aetna reasonably determined that Chiodo had not provided objective medical evidence sufficient to meet his burden.  That decision was not an abuse of discretion.  *See Nichols v. Verizon Commc'ns*, 78 F. App'x 209, 212 (3d Cir. 2003) (upholding denial of benefits where "[t]he record reveals that the denial of Nichols' claim was based on any number of factors, including the lack of objective tests demonstrating the existence of her symptoms . . . ."). Aetna's motion for summary judgment is granted, and Chiodo's motion for summary judgment is denied.

  An appropriate order follows.

                <u>*/s/ Gerald J. Pappert*</u>
                GERALD J. PAPPERT, J.